## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PHOENIX DRILLING, INC.,**

      **Plaintiff and Counterclaim Defendant,**

*and*

**BRADLEY LIGGETT and**
**DENNIS CHIDESTER,**

      **Intervenor Plaintiffs,**

*vs.*                         **CIVIL ACTION NO.  1:11CV08**

**EAST RESOURCES, INC.,**
**EAST RESOURCES MANAGEMENT, LLC., and**
**SWEPI, LP.,**

      **Defendants and Counterclaimants,**

*vs.*

**BRADEN DRILLING, LLC.,**

      **Counterclaim Defendant.**

### ORDER/OPINION

On the 12th day of January, 2012, Plaintiffs filed a Motion to Compel [Docket Entry 48]. On January 7, 2012, Plaintiffs' Motion to Compel was referred to the undersigned [Docket Entry 50]. On February 2, 2012, Defendants East Resources, Inc., East Resources Management, LLC, and Swepi, LP (collectively "Defendants") filed their Response to the Motion [Docket Entry 56]. On February 8, 2012, Plaintiffs filed a Reply [Docket Entry 62]. The Court finds the issues involved in the motion are not complex and therefore do not require a hearing.

The Amended Complaint in this case was filed against the three Defendants named in the motion in State Court on December 21, 2010 [D.E. 1]. On January 26, 2011, Defendants removed the action to this Court [D.E. 1]. The Answer to the Amended Complaint was filed on February 28, 2011 [D.E. 10], and an Amended Answer on March 11, 2010 [D.E. 13]. These parties filed their joint Rule 26(f) Report on March 10, 2011. A Scheduling Order was entered on October 3, 2011 [D.E. 38].[1]

Plaintiffs served "Plaintiff's First Set of Combined Discovery Requests to Defendants" on October 20, 2011 [D.E. 39]. On November 16, 2011, Defendants requested a two week extension, and the parties agreed to a mutual two week extension [Exhibit 2]. On December 5, 2011, Defendants requested another ten days' extension, and the parties again agreed to a mutual extension [Exhibit 3]. On December 15, 2011, Defendants served "Defendants [sic] Objections to Plaintiff's First Set of Interrogatories and Requests for Production of Documents" [Exhibit 4]. A review of the document indicates Defendants inexplicably did not respond in any manner to Interrogatories 1, 2, 3, 4, 5, 8, 10, 11, 14, 15, or 17, or Requests 4, 8, 20, or 25. As to the Interrogatories and Requests to which Defendants did respond on December 15, the response to every Interrogatory and Request was solely an objection, with the exception of Requests 10 and 11, regarding experts, which Defendants stated would be supplied in accordance with the Court's scheduling order. The objection to nearly every request was that it was "overly broad, unduly burdensome, and not reasonably calculated to lead to discovery of admissible evidence." In brief, absolutely no information was provided in response to the discovery requests, despite the extensions of time.

---

[1] Other activity took place in the interim, including other parties being added as intervenors and counterclaimants. The Court notes, however, that the parties involved in this motion were named in the original complaint.

On December 19, 2011, counsel for Plaintiffs wrote to counsel for Defendants, first noting the numerous requests to which Defendants did not respond at all, and second noting the requests addressed resulted solely in objections, with no information provided whatsoever [Exhibit 5].  On December 21, the parties conferred by telephone.  According to a letter from Plaintiffs' counsel to Defendants' counsel, which Defendants do not dispute, Defendants advised during the phone conference: "East Resources, Inc., is having some trouble extracting information and documentation from its computer system and you believe that it may be a week or two before you will be able to extract it or determine that it is non-extractable."  In the letter, counsel for Plaintiffs agreed to wait for further responses until December 28, 2011 [Exhibit 6].

According to a letter written by Plaintiffs' counsel to Defendants' counsel on December 28, 2011, counsel did confer by telephone that date [Exhibit 7].  Counsel for Plaintiffs agreed to "forget" Requests 16, 17, 18, and 19.  Defendants appeared to be "willing to provide [] some of the documentation and information at issue."  They also appeared to resolve the issues regarding Interrogatory 7 and Requests 21 and 22.

Plaintiffs' counsel agreed to narrow the scope of Interrogatory 6 and Request 23 to "lawsuits involving allegations of fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel/detrimental reliance," and also agree to limit the requests to lawsuits filed between January 1, 2005, and the date of the letter.  Those requests remain disputed, however, as does Interrogatory 9.  Significantly, Defendants at that point had still not responded in any way to 11 interrogatories and 4 requests for production.

On January 4, 2012, counsel for Defendants emailed counsel for Plaintiffs, advising:

I have quite a bit more information to discuss with you and some more items that we can probably agree upon following up on our conversation last week.  I am out today with some kind of head and chest flu, but I hope to be up and running enough to be

back at work tomorrow. I will give you a call tomorrow to discuss if that works for you.

Counsel for Plaintiffs replied: "That works. I hope you feel better." [Exhibit 8].

On January 11, 2012, Plaintiffs' counsel emailed Defendants' counsel advising that, despite counsel's assurances that responses would be filed on January 9, 2012, he had still not received any response whatsoever to the 11 interrogatories and 4 requests for production to which Defendants did not object [Exhibit 9].

The Motion to Compel was filed the next day, January 12, 2012. On January 26, 2012, Defendants requested and were granted an extension of time to respond to the motion to compel "as the parties continue to discuss the substance of that motion and the Defendants [sic] responses thereto."

Defendants filed their Responses to the discovery requests on January 27, 2012, more than three months after the requests were first served. They filed their Response to the Motion to Compel on February 2, 2012.

Still in dispute are Interrogatories 6 and 9 and Request for Production 23.

Interrogatory No. 6 and the response thereto are as follows:

**INTERROGATORY NO. 6:** Please list each and every lawsuit that has been filed against East Resources, Inc. In the past ten (10) years, including:

(a) the names of all parties;

(b) the jurisdiction;

(c) the venue;

(d) the civil action number;

(e) the name(s) of the attorney(s) representing the adverse party or parties;

(f) the telephone number(s), if known, of each and every attorney who represented the

adverse party or parties in the lawsuit against East Resources, Inc.,;

(g) the general allegations and specific causes of actions set forth in the complaint;

(h) the ultimate resolution of the lawsuit (settlement, dismissal, trial, etc.);

(I) the amount of money paid by East Resources, Inc. or on behalf of East Resource,

Inc. to satisfy the judgment or settlement obligations.

**ANSWER**: The Defendants object to the information sought relative to all lawsuits against East Resources for the past ten years as being irrelevant, overly broad and not reasonably calculated to least to the discovery of admissible evidence.

Request for Production 23 and the Response thereto are as follows:

**REQUEST FOR PRODUCTION NO. 23:** Please provide copies of each and every complaint that has ever been filed against East Resources, Inc. which includes allegations of fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel, detrimental reliance.

**RESPONSE:** The information sought by request number 23, requesting copies of every complaint that has ever been filed against East Resources alleging fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel/detrimental act, is overly broad, unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence.

The Court notes that Plaintiffs subsequently narrowed the scope of both the Interrogatory and the Request for Production to include information regarding lawsuits filed between January 1, 2005, to the present, and involving only allegations of fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel/detrimental reliance.

Interrogatory 9 and the response thereto are as follows:

**INTERROGATORY NO. 9**: Please state the compensation Defendant East Resources, Inc. paid to its executives (including the CEO, COO, CFO, all other executive level employees and members of the company's Board of Directors) for the years 2000 through 2010.

5

> **ANSWER**: The Defendants object to the information sought by interrogatory number 9 and that information paid to all executives for an eleven year time period of East Resources is neither relevant nor reasonably calculated to lead to discovery of admissible evidence.

First, general objections to discovery are, at the very least, disfavored. See, i.e., PLX, Inc. v. Prosystems, Inc., 220 F.R.D. 291 (N.D.W.Va. 2004); Momah v. Albert Einstein Medical Center, 164 F.R.D. 412 (E.D.Pa. 1996)(holding that "mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice")(quoting Josephs v. Harris Corp., 677 F.2d 985 (3d Cir. 1982)). Defendant's subsequent response to the motion to compel only serves to underscore the inadequacy of the actual original discovery responses. As to Interrogatory 6 and Request 23, Defendant argues, in pertinent part:

> This is a very specific case with very specific facts. Past litigation involving ERI, including those outside of the state of West Virginia, has absolutely no bearing on this action. While Plaintiff's counsel agreed that Interrogatory No. 6 needed to be narrowed to reflect Request No. 23 and should be limited to lawsuits filed between January 1, 2005 and today . . . the narrowing of prior litigation information to "fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel/detrimental reliance" over a seven year period still results in an unwarranted fishing expedition for irrelevant information in hopes of invoking punitive damages. Due process does not allow such a tactic.

As to Interrogatory 9, Defendant argues:

> Likewise, Interrogatory No. 9, which asks for the executive compensation of ERI executives from 2000 through 2010, is not reasonably calculated to lead to admissible evidence. Plaintiff explains that it is relevant as to punitive damages and the fact that it believes an ERI employee stated that ERI did not have the cash to consummate an agreement with Phoenix. These two distinct uses for this information are both unwarranted. First, net worth, not executive compensation, is what is relevant for punitive damages in West Virginia . . . Second, if the Plaintiff wanted to know if cash was available during the time frame it alleges ERI agreed to purchase an interest in Phoenix, it could have simply asked that question in a discovery request. Instead, it

>is trying to pry into executive compensation as opposed to asking a direct question, which would have yielded a response that would make an inquiry into executive compensation unnecessary. Simply put, executive pay is not a relevant consideration for punitive damages. While net worth is relevant, that information has been fully provided.

Second, the Court does find significant the undisputed fact that the responses, based solely on the requests being "overly broad, unduly burdensome and not reasonably calculated to lead to discovery of admissible evidence," were filed nearly two months after service of the requests, and after two requests for extensions of time were granted by Plaintiffs. In fact, the response to every single discovery request was an objection, while 11 interrogatories and 4 requests for production were not addressed in any way whatsoever. The Court does not find that the objections to these requests, as argued in the response to the motion to compel, required "additional time and resources to locate . . . including the examination of multiple servers and individual laptops that were not centrally located given the sale of the company."

For this reason alone, the Court finds Plaintiff' motion to compel should be granted. The Court shall, however, discuss each of the items separately. F.R.C.P. 26(b)(1) provides:

>Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Defendants do not argue that the information sought in any of the requests is privileged or confidential.

The "discovery rules are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.451 (1947). However, the discovery sought must be relevant F.R.C.P. 26(b)(1); see also Herbert v. Lando, 441 U.S. 153, 99 S.Ct 1635, 60 L.Ed.2d 115 (1979). In striking the appropriate balance, "[d]istrict courts enjoy nearly unfettered discretion to control the

7

timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, 81 F.3d 416 (4th Cir. 1996). "Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121 (M.D.N.C. 1989). Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The issue is therefore whether the information is relevant to any party's claim or defense. Plaintiffs' complaint includes claims of fraud and tortious interference with business relations. Plaintiffs claim that Defendants made an offer of $8,750,000.00 for a 35% interest in Plaintiff's business in order to induce Plaintiff to reject an offer of $20,000,000.00 plus incentives for the sale of the business to another entity. Plaintiffs further claim that at the time Defendants made the offer, they knew, or should have known they did not have the cash flow to pay the $8,750,000.00.

Defendants deny that they asked Plaintiffs to reject the other entity's proposed offer, and further deny that, as an incentive, they offered to purchase a 35% ownership in Plaintiff's business for $8,750,000.00. They also deny the claim that when it was time for them to pay the purchase price, they claimed that did not have the cash on hand.

Plaintiffs claim they are entitled to punitive damages for fraud.

Regarding Interrogatory No. 6 and Request No. 23, the Court finds the information requested appears reasonably calculated to lead to the discovery of admissible evidence. In Culbertson v. Jno. McCall Coal Co., 275 F.Supp. 662, 676 (DCWVa 1967), the Court held:

> The law seems to be well settled that in civil cases, where fraud is an issue, evidence

of other fraud of like character, committed by the same party, at or about the same time, is admissible to indicate a scheme, plan or design on his part broad enough to include the act in question. 20 Am.Jur. (Evidence) Sec. 303, pages 281-282, gives the general rule thusly:

> 'The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so related in character, time, and place of commission as to tend to support the conclusion that they were part of a plan or system or as to tend to show the existence of such a plan or system. Thus, when one's motive, malice, or ill will or his intention or good or bad faith in doing or omitting to do certain acts becomes an issue, his acts, statements, and conduct on other occasions which have a bearing upon his motive or intention upon the occasion in question are competent evidence. Where several forgeries were a part of the same transaction and tend to show a common plan or scheme, evidence of other forgeries or alterations is admissible upon an issue of forgery or alteration in a civil case. Where fraud is an issue, evidence of other similar frauds perpetrated by the same person on or about the same time, is admissible particularly where the acts are all part of one general scheme or plan to defraud.'

In <u>States v. Riss & Co., Inc.</u>, 139 W.Va. 1, 80 S.E.2d 9, it is said that,

> 'In an action to recover the value of a cargo allegedly destroyed by fire following an accident, evidence of other accidents involving similar cargo, in which the cargo was allegedly destroyed by fire, which accidents occurred closely in point of time with the accident in question, is admissible under the defense of fraud to show a general plan or scheme or intent to defraud.'

In the case of <u>Shingleton Bros. v. Lasure</u>, 122 W.Va. 1, 6 S.E.2d 252, Syl. 1, it is stated,

> 'In a civil case there may be proof of acts other than the one involved if they be so related in character, time and circumstances as to tend to establish a plan or system inclusive of the act in suit.'

In the case of <u>First National Bank of Pennsboro v. Barker</u>, 75 W.Va. 244, 83 S.E. 898, Syl. 4 reads as follows:

9

> 'To prove, in a civil action, the perpetration of a criminal or fraudulent act by any person, evidence of other similar acts done by him, conduct on his part, importing the same and his admissions thereof are admissible, provided they are so connected in time, purpose and character as to indicate a scheme, plan or design on his part, broad enough to include the act in question.'

In the case of <u>Piedmont Bank v. Hatcher</u>, 94 Va. 229, 26 S.E. 505, the Court held that where fraud in the sale of property is an issue, evidence of other frauds of like character, committed by the same party, at or about the same time, is admissible. The Court held that large latitude is always given to the admission of evidence where the charge is fraud.

In the case of <u>Miles F. Bixler Company v. Dunsmore</u>, 109 W.va. 727, 156 S.E. 72, the Court held that evidence of an agent's fraud, in procuring a similar order, was admissible to corroborate defendant's testimony as to fraud.

In the case of <u>Baldwin v. Warwick (C.C.A. 9th Cir),</u> 213 F.2d 485, Syl. 3 reads as follows:

> 'In action by real estate dealer for damages on ground that defendants, pursuant to conspiracy between them, had defrauded dealer by trick and device inducing amnesia in him by means of drugged drinks with result that he had sustained gambling losses, testimony of other real estate men showing similar experiences they had had with defendants was admissible for limited purpose of showing existence of over-all scheme on defendants' part.'

In the case of <u>Osborne v. Holt and Woodson</u>, 92 W.Va. 410, Syl. 1, <u>114 S.E. 801</u> reads as follows:

> 'Evidence of similar representations, made to others, by one soliciting subscriptions to the capital stock of a corporation, to induce purchases of such property, are admissible in a suit for damages by one who purchases stock on the faith of fraudulent representations, not as evidence of the statements made to the plaintiff in such suit, but as showing the inclination of mind of the party charged with making the representations on the subject.'

In the case of <u>Wilson v. Carpenter's Administrator</u>, 91 Va. 183, 21 S.E. 243, a suit to cancel a contract on account of false representations by an agent, the Court held that evidence of similar statements made by the agent to other people at other times, though not competent to prove what occurred when the contract in question was

10

> made, might be 'introduced to show the bent of the agent's mind.

> Thus, the evidence offered by Culbertson, tending to show the practicing of fraud and deceit by McCall against Pine Oaks, in a similar transaction, over a similar period of time, and in the same general area, though not competent to prove the misconduct charged by Culbertson in the instant case, nevertheless is admissible for the purpose of showing 'the bent of the agent's (McCall's) mind,' or as said by the Court in the case of Osborne v. Holt, supra, for the purpose of 'showing the inclination of mind' of McCall, the agent.

The Court finds the information requested in Interrogatory 6 and Request 23, as later narrowed by Plaintiffs, appears reasonably calculated to lead to the discovery of admissible evidence. The Court notes that Defendants rebuffed Plaintiffs' offer to narrow the requests; however, under its power pursuant to F.R.Civ.P. 26(b)(2)(C)(iii) the Court shall limit both the interrogatory and the request to information regarding lawsuits filed between January 1, 2005, to the present, and involving only allegations of fraud, breach of contract, tortious interference with business relations, and/or equitable estoppel/detrimental reliance.

Regarding Interrogatory 9, the Court reiterates that Defendant's general response, that the information is neither relevant nor reasonably calculated to lead to discovery of admissible evidence, especially where made two months after the request was made, and after two extensions of time, is inappropriate.

The Court also finds that the information may lead to discovery of admissible evidence, even if not ultimately admissible. Plaintiffs allege that an offer was made by Defendants, which was not withdrawn; they further allege that Defendants later stated they did not have the cash available to pay Plaintiffs, and asked Plaintiffs to wait. Meanwhile, Plaintiffs allegedly lost the opportunity to sell to another buyer. Defendant denies each and every one of these claims. The Court finds that the amount of compensation paid to executives is relevant in that it may indicate whether Defendants had cash

11

on hand at the time of the alleged deal, before that time, or after. A significant change, either up or down, in such compensation may also be relevant to Plaintiffs' allegations of fraud, and for purposes of punitive damages. Defendants did not object on the basis of the information being confidential, unduly burdensome, or overly broad. The Court therefore does not require any change to that interrogatory.

For all the above reasons, Plaintiffs' Motion to Compel [D.E. 48] is **GRANTED**. Defendants shall have twenty-one (21) days from the date of entry of this Order to fully respond to Interrogatories 6 and 9 and Request for Production 23.

Pursuant to F.R.Civ.P. 37(a)(5)(A):

> [T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Counsel for Plaintiffs is therefore directed to file with the Court and serve on Plaintiffs within fourteen (14) days of entry of this Order an accounting of the fees and costs necessitated in filing this motion. Counsel for Defendants shall file any objections to Plaintiffs' claims of costs and fees and the amounts claimed, within seven (7) days of the filing of the accounting. Only if both a claim for fees and an objection thereto are filed, will the Court then schedule a hearing to provide Defendants an opportunity to be heard prior to the awarding of any expenses.

It is so **ORDERED**.

The United States Clerk for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record.

DATED: March 13, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE